**Anthony Martin ZILKA, Petitioner-Appellant,**

**v.**

**W. J. ESTELLE, Jr., Director, Texas Dept. of Corrections, Respondent-Appellee.**

**No. 75–1959.**

United States Court of Appeals, Fifth Circuit.

March 25, 1976.

Rehearing and Rehearing En Banc Denied May 5, 1976.

Stanley G. Schneider, Staff Counsel for Inmates, Texas Dept. of Corr., Huntsville, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Merrill Finnell, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This case raises the question of whether constitutional error committed in permitting the prosecution to expose two counselless felony convictions during cross-examination of a state defendant can be cured by application of the harmless error rule so that the state conviction can withstand constitutional attack in a habeas corpus proceeding, and if so, whether the state trial record supports the district court's determination that the error was harmless beyond a reasonable doubt. We conclude that this constitutional infirmity can and did amount only to harmless error and therefore affirm the district court's denial of a writ of habeas corpus under 28 U.S.C.A. § 2254.

Petitioner was convicted in 1964 of statutory rape of his three year-old stepdaughter. The conviction was affirmed. *Zilka v. State,* 385 S.W.2d 680 (Tex.Cr. App.1964). Texas law at that time did not provide for a bifurcated trial and the same jury determined both guilt and punishment. Petitioner testified at length in his own behalf. During cross-examination the following exchange occurred:

Q Mr. Zilka, have you ever been convicted of a felony?

A Yes, sir.

Q How many times?

Mr. Pool: We object to that question.

The Court: Overruled; answer the question.

Q How many times, Mr. Zilka?

A Twice.

Q Both of those in Pennsylvania, is that correct?

A Yes, sir.

This was the only evidence concerning Zilka's prior convictions. Its brevity stands in marked contrast to some forty pages of direct and cross-examination. The evidence was not commented upon thereafter by either the lawyers or the judge. These prior convictions referred to occurred in 1953. The State has conceded the convictions to be invalid under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See Kitchens v. Smith,* 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971) (*Gideon* fully retroactive).

If the instant cross-examination by the prosecutor had concerned valid prior convictions, their use would have been proper for impeachment purposes. *See* Vernon's Tex.Code of Crim.Pro. art. 38.29. The prosecutor followed the correct procedure by asking if Zilka had ever been convicted of a felony, when and how many times. *See generally Beaudine v. United States,* 368 F.2d 417, 421–422 (5th Cir. 1966); C. McCormick, *Evidence* § 43, at 92–93 (1954); 2 Wright, *Federal Practice & Procedure* § 416, at 193–196 (1969).

There is no doubt, however, that the use of constitutionally invalid prior convictions for impeachment purposes is error of constitutional dimension. *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

The question then is whether the error leads to an automatic grant of a writ of habeas corpus, or whether, as the State contends, the conviction should remain undisturbed if the error was harmless, notwithstanding its constitutional proportions.

The Supreme Court, faced with the argument that denial of a federal consti-

tutional right, no matter how unimportant, should automatically result in reversal of a conviction, squarely held in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that some constitutional errors in the setting of a particular case can be deemed harmless. In fashioning the rule, however, the Court declined to follow the harmless error statute or rules of the 50 states and the United States. These laws usually prohibit reversal of criminal convictions which do not materially affect the outcome of the trial, prejudice the defendant or infringe upon some substantive right. For purposes of reversal, however, the person affected has the burden of showing harm. *See generally* 5 Am.Jur.2d *Appeal & Error* § 780, at 222–223 (1962).

When the error rises to constitutional level, the United States Supreme Court determined that a new standard need be developed in order to better protect a defendant from the greater prejudicial impact which naturally may follow violations of the Constitution. The *Chapman* Court held that: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710. In other words, constitutional error could be said to be harmless only if there is no reasonable possibility that the constitutionally infirm evidence might have contributed to the conviction. *See Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173 (1963). Under *Chapman,* once error is established, it carries the presumption of prejudice unless the state demonstrates otherwise beyond a reasonable doubt. In *Chapman* the constitutional infirmity concerned the prosecutor's comment on defendants' failure to testify which, under the circumstances of that case, the Court held not to be harmless error.

In the nine years since *Chapman,* the Supreme Court has applied this harmless error concept to a full spectrum of cases where constitutional errors were in-

volved. *See, e. g., Milton v. Wainwright,* 407 U.S. 371, 372–373, 92 S.Ct. 2174, 2175, 33 L.Ed.2d 1, 3–4 (1972) (post-indictment/pretrial confession); *Chambers v. Maroney,* 399 U.S. 42, 52–53, 90 S.Ct. 1975, 1981–1982, 26 L.Ed.2d 419, 428–429 (1970) (unreasonable search and seizure); *Price v. Georgia,* 398 U.S. 323, 331, 90 S.Ct. 1757, 1758–1762, 26 L.Ed.2d 300, 306 (1970) (double jeopardy); *Harrington v. California,* 395 U.S. 250, 253–254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284, 287 (1969) (denial of Sixth Amendment right to confrontation); *Fontaine v. California,* 390 U.S. 593, 595–596, 88 S.Ct. 1229, 1230–1231, 20 L.Ed.2d 154, 156–157 (1968) (comment on defendant's failure to testify); *United States v. Wade,* 388 U.S. 218, 242, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149, 1166 (1967) (pretrial lineup and in-court identification). Likewise, the Fifth Circuit has applied the harmless error rule to cure a wide range of constitutional errors. *See, e. g., Null v. Wainwright,* 508 F.2d 340, 345 (5th Cir.), *cert. denied,* 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975) (*Miranda* violation); *Hoover v. Beto,* 467 F.2d 516, 522–523 (5th Cir.), *cert. denied,* 409 U.S. 1086, 93 S.Ct. 703, 34 L.Ed.2d 673 (1972) (Sixth Amendment right to confrontation); *Adkins v. Beto,* 462 F.2d 802, 804 (5th Cir. 1972) (evidence from illegal search and seizure said to be harmless error); *United States v. White,* 444 F.2d 1274, 1278 (5th Cir.), *cert. denied,* 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971) (comment for failure to take stand held to be harmless error). *See also Smith v. Estelle,* 519 F.2d 1267 (5th Cir. 1975), *reh. granted in part and remanded,* 527 F.2d 430, 432 n. 4 (5th Cir. 1976) (unlawful confession).

The petitioner asserts the use of the counselless convictions for impeachment to be inherently prejudicial, however, and not curable by the harmless error rule. Petitioner relies on *Burgett v. Texas, supra,* and *Loper v. Beto, supra.*

In *Burgett,* the Supreme Court reversed the Texas Court of Criminal Appeal's affirmance of a defendant's conviction for assault with malice afore-

thought with intent to murder. *Burgett* involved the use of prior invalid convictions for purposes of enhancement which, under Texas law, required the imposition of a mandatory life sentence upon conviction. There the Court stated that

[t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case.

389 U.S. at 115, 88 S.Ct. at 262, 19 L.Ed.2d at 324. The Court in *Burgett* set forth the general rule that convictions in violation of *Gideon* cannot be used "to support guilt or enhance punishment." *Burgett* held the error to be of constitutional quality but did not indicate if the error was automatically fatal.

This Court has not read *Burgett* as establishing the need for an automatic reversal when an illegal conviction has been so used. Although *Beto v. Stacks*, 408 F.2d 313 (5th Cir. 1969), affirmed the granting of a writ of habeas corpus when evidence of a prior conviction declared void as violating the Fourth Amendment was used to enhance punishment in a single stage recidivist trial, the Court there looked at *Burgett* in this context:

The simple fact that a constitutionally infirm conviction was used at appellee's trial now makes it incumbent upon the State to show "beyond a reasonable doubt" that the jury did not rely on such conviction "to support guilt." *Burgett v. Texas, supra*; *Chapman v. California*, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Absent such a showing, this court has no choice but to affirm the lower court's decision.

408 F.2d at 318.

Recently, this Court in *Thomas v. Savage*, 513 F.2d 536 (5th Cir. 1975), recognized that use of a prior counselless conviction in a *misdemeanor* context could be harmless error when used in consideration of a sentence. *See Swanson v. Es-*telle, 523 F.2d 1250 (5th Cir. 1975); *Barnes v. Estelle*, 518 F.2d 182 (5th Cir. 1975). *Cf. Smith v. Estelle, supra.*

Other circuits have also read *Burgett* as not precluding the curative use of the harmless error rule even when the prior convictions were counselless. These cases are similar to the case at bar where the prior counselless convictions were used for the purpose of impeachment. *See Subilosky v. Moore*, 443 F.2d 334 (1st Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971); *Tucker v. United States*, 431 F.2d 1292 (9th Cir. 1970), *aff'd on other grounds*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Gilday v. Scafati*, 428 F.2d 1027 (1st Cir.), *cert. denied*, 400 U.S. 926, 91 S.Ct. 188, 27 L.Ed.2d 186 (1970). *See also Bates v. Nelson*, 485 F.2d 90, 95 (9th Cir. 1973), *cert. denied*, 415 U.S. 960, 94 S.Ct. 1491, 39 N.E.2d 575 (1974); *United States v. Faulkenbery*, 472 F.2d 879, 881 (9th Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973).

Contrary to petitioner's argument, *Loper v. Beto, supra*, appears to give tacit approval to this reading of *Burgett. Loper* involved facts similar to the instant case with the defendant being convicted of statutory rape of his stepdaughter. Unlike the case before us, however, in *Loper* only two witnesses testified. The verdict, therefore, turned on whether the jury would believe the complaining stepdaughter or defendant. To impeach his credibility, the defendant was cross-examined at length as to four prior criminal convictions, all of them counselless. 405 U.S. at 474–478 nn. 1, 3, 92 S.Ct. 1014, 1017, 31 L.Ed.2d 374, 379. The Supreme Court vacated the denial of the writ of habeas corpus indicating that if Loper was unrepresented by counsel and did not waive the right to counsel at the time of the prior convictions, there would be little room for a finding of harmless error on remand "[i]n the circumstances of this case . . . ." *Id.* at 483 n. 12, 92 S.Ct. at 1019, 31 L.Ed.2d at 381. By the reference to "the circumstances of this case"

the Court implied that harmless error might cure the defect in other circumstances. Justice White, concurring in the result in *Loper,* a plurality opinion, stated, "In this connection, I do not understand our prior decisions to hold that there is no room in cases such as this for a finding of harmless error . . . ." *Id.* at 485, 92 S.Ct. at 1020, 31 L.Ed.2d at 383.

Following these authorities, we hold that a conviction will not be set aside on a petition for writ of habeas corpus even though prior counselless felony convictions, unconstitutionally void under *Gideon,* were used for impeachment of the defendant, if the error is harmless beyond a reasonable doubt.

Applying the harmless error rule to this case, the conviction must stand if, upon a reading of the trial record, the court is firmly convinced that the evidence of petitioner's guilt was overwhelming and that the jury would have reached the same result without the tainted evidence. Unlike our recent case of *Null v. Wainwright, supra,* the evidence in this case is circumstantial, rather than direct. The harmless error rule has been applied, however, in circumstantial evidence cases. *See United States ex rel. Satz v. Mancusi,* 414 F.2d 90 (2d Cir. 1969); *cf. Fontaine v. California, supra,* 390 U.S. 590, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968).

Upon a reading of the record, we believe the evidence against Zilka was sufficiently overwhelming to make the introduction of the tainted evidence harmless error. Perhaps the most damaging evidence against Zilka was the testimony of Janis Poole, a neighbor of the Zilka's. Mrs. Poole testified she went to petitioner's trailer the day of the crime at the behest of Zilka's common-law wife. There she saw the child, still dressed in blood soiled clothes, lying on the bed. She testified that in response to the wife's question as to who did it, the child replied, "Tony did." Petitioner's first name is Anthony. The uncontroverted medical evidence was that the child had been sexually violated, a fact precluding self-injury. The prosecution called the deputy sheriff to whom petitioner gave a voluntary statement approximately two days subsequent to the crime. Contained in this statement was Zilka's own comment that he was with the child during the only period of time in which the crime could have been perpetrated. In fact, Doyle Jones, a witness and the first person to see Zilka and the child subsequent to the girl's injury, testified that the girl had already sustained vaginal bleeding when he first saw her. Although the evidence was all circumstantial, it was overwhelming in the conclusion that only petitioner could have raped the child.

In fully examining the extent of the error, we look also to petitioner's testimony, for the effect of impeachment. Zilka testified he had not raped the child, but she had hurt herself while playing with a screwdriver, and that was the cause of the bleeding. Yet, medical evidence showed the girl to have been raped, and Zilka himself testified he was the only one with the child during the time when the act could have occurred. Jones testified petitioner told him that the child had been injured when "she slid off of the car seat down on the floor and hit a piece of iron." The prosecution cross-examined Zilka on the statement he had made to the police. That statement was unclear in confirming whether harm had resulted from the screwdriver, or whether the injury was caused by a horse the little girl was riding just prior to Zilka's alleged discovery of her bleeding. In that statement, Zilka indicated that the child said "Tony did it." Tony, according to Zilka, being the name of the horse. Cross-examination elicited, however, that the horse was not named Tony. Thus, aside from the state's attempt to discredit Zilka's story by reference to prior convictions, his testimony on its own merits rendered itself questionable.

Minor emphasis was placed upon this improperly admitted evidence. The only

mention of these prior convictions was during cross-examination. The brief colloquy between petitioner and the state's attorney was but a fraction of over forty pages of testimony. The prosecution did not pursue its line of questioning. The jury instructions contained no reference to the convictions, nor did the petitioner request the judge to instruct the jury on the proper use of these convictions. At the evidentiary hearing in the district court, the prosecutor in the original trial testified that he had no recollection of mentioning the convictions in his closing argument, and his notes showed no reference to them. Finally, Zilka testified at the habeas corpus hearing that he had no remembrance of the convictions being mentioned at any other point in the trial. This brief reference to the convictions is clearly distinguishable from that which occurred in *Burgett v. Texas, supra*, and *Loper v. Beto, supra*.

There was no mention of the nature of the prior crimes, which were not similar to the rape charge. Similar crimes would, of course, have a much greater impact upon the jury. Because of the nature of the crime here involved, this type of impeachment would appear to have a minimal effect at most.

The situation *sub judice* was not of the type where guilt boiled down to the jury's belief of one of two competing witnesses. Such was the case in *Loper v. Beto* where the victim of the rape was squared off against the defendant who denied the charge. Although Zilka's credibility was being challenged, the case against him did not rest upon the word of a single conflicting witness so that the impeachment could not have such disastrous consequences. *Accord Bates v. Nelson, supra*, 485 F.2d at 96.

Reviewing the record as we have, we believe that the error was harmless beyond a reasonable doubt and that the use of the two prior invalid convictions did not influence the jury's decision. Accordingly, we affirm the district court's denial of the writ of habeas corpus.

Affirmed.