**Ulysses GIBSON, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 77-2772.

United States Court of Appeals, Fifth Circuit.

June 22, 1978.

Ulysses Gibson, pro se.

Champ Lyons, Jr. (court-appointed), Mobile, Ala., for petitioner-appellant.

J. R. Brooks, U. S. Atty., Dayle E. Powell, Asst. U. S. Atty., Birmingham, Ala., for respondent-appellee.

Before GEWIN, GODBOLD and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

Gibson appeals from the denial of his petition seeking to vacate his five year sentence for breaking and entering a postal facility. Relief is claimed on the grounds that at trial the prosecution used prior counselless convictions to impeach his testimony. In the circumstances presented by this appeal we find that the improper use of these convictions constitutes harmless error and therefore affirm the decision of the lower court.

Gibson received his breaking and entering sentence on November 11, 1970, in the United States District Court for the Northern District of Alabama.[1] Later that month he was also convicted in the Middle District of Alabama for postal money order fraud and sentenced to five years imprisonment with this sentence to run consecutively with the Northern District sentence.[2] Gibson served his breaking and entering sentence and was later paroled from the fraud sentence. On March 16, 1976, however, he was found guilty of mail theft and taken back into custody. To further compound Gibson's troubles, in April of 1976, as the result of a warrant for parole violations, a detainer was placed against him.

---

1. Gibson appealed his conviction to this court, *United States v. Gibson*, 444 F.2d 275 (1971), raising as one of his points of error the admission of his prior convictions into evidence. In regard to this alleged error we stated:

   Additionally, the questions put to Gibson by the Government during cross-examination as to his prior felony convictions were not improper. This Circuit has long and effectively foreclosed this argument. For the purpose of discrediting a witness, in a federal criminal trial it is not improper to show that the witness, including a defendant who has elected to testify, has been convicted of a felony.

   *United States v. Smith*, 420 F.2d 428 (5th Cir. 1970).

   This court, which rendered its opinion prior to the decision in *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), thus, never considered the effect of the prior counselless convictions upon the jury's verdict.

2. At a hearing for reconsideration of this sentence held on October 8, 1974, the trial judge set the sentence aside and resentenced Gibson to three years because the judge felt that Gibson's prior convictions might possibly have affected the length of his original sentence.

In December of 1976 Gibson filed the *pro se* motion which is the subject of this appeal. The trial judge, in his order of January 4, 1977, denied relief on the grounds that "there is no reasonable possibility that the evidence complained of by Movant might have contributed to his conviction, and therefore, if an uncounseled conviction was used for impeachment purposes it was harmless error beyond a reasonable doubt."

■ The use of convictions void under *Gideon v. Wainwright* to impeach the credibility of a defendant's testimony constitutes a violation of due process. *Loper v. Beto,* 405 U.S. 473, 483, 92 S.Ct. 1014, 1019, 31 L.Ed.2d 374, 381 (1972). We have held, however, that the use of such convictions does not automatically mandate reversal if that use falls within the harmless error rule of *Chapman v. California.*[3] See *Zilka v. Estelle,* 529 F.2d 388, 392 (5th Cir. 1976). In *Zilka* we stated that the test for determining harmless error in this type of case is whether "upon a reading of the trial record, the court is firmly convinced that the evidence of petitioner's guilt was overwhelming and that the jury would have reached the same result without the tainted evidence." *Id.* Our inquiry must therefore be directed towards the evidence which led to Gibson's conviction and the effect of the use of the invalid convictions upon the jury's verdict.

The following colloquy comprises the subject of this appeal:

Q. Mr. Gibson, were you convicted—have you ever been convicted of a felony?

A. I sure have, several of them.

Q. State of Alabama, 1967, for the crime of burglary?

A. Several of them; not one, but several.

Q. You were convicted of burglary, breaking and entering, State of Alabama, got a three year sentence?

A. Yes, sir.

Q. State of Alabama, 1964, did you get a sentence then, and conviction?

A. Yes, sir.

Q. Got a ten year sentence in the State of Pennsylvania, 1950, for breaking and entering?

A. Yes, sir.

Q. State of Alabama, 1964, one year and one day for burglary?

A. Right.

Q. 1944 State of Alabama, eighteen month sentence, burglary?

A. Yes.

Q. 1943 State of Alabama, two years, eleven months?

A. Yes.

(R. 236–37).

The 1943 and 1944 convictions were shown to have been counselless. The 1967 and 1964 convictions were valid. There is a dispute, however, whether Gibson was represented by counsel at the 1950 Pennsylvania proceeding. There, Gibson was convicted of two separate offenses of burglary and received a five year sentence for each offense. The record reveals an individual named Dean listed as defense counsel and a plea of guilty signed by Gibson.[4] Gibson himself, in his *pro se* motion to vacate his sentence states "To show petitioner was a convicted felon the Government offered into evidence in 1943 and on a 1944 convic-

---

**3.** 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman* the Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. *Id.* at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711.

**4.** On the reverse side of each Pennsylvania indictment the following appears:

Jan 26 1950

Court Room No. 2
Before McNaugher Judge

Stockdale Trial A.D.A.
Dean Def. Counsel
The defendant in open court plead guilty to the charge preferred in the within indictment, waives presentation thereof to the Grand Jury, waives appointment of counsel, and consents to the pronouncement of sentence forthwith.

/s/ Ulysses Gibson

Record verified by:

/s/ McDevitt

Minute Clerk

tion. Petitioner is objecting on the ground that the two conviction was constitutionally invalid." Also, during a hearing held on October 8, 1974, in the Middle District of Alabama, to reconsider a sentence imposed by that court on Gibson, Gibson's counsel on this appeal stated to the court that at the Pennsylvania proceeding Gibson was represented by counsel.[5] The record would therefore appear to indicate that the Pennsylvania proceeding was not counselless.

■ However, even assuming that the Pennsylvania proceeding was counselless, in light of the overwhelming evidence of petitioner's guilt and the fact that at least two of the convictions used to impeach Gibson's testimony were valid, we find that the introduction of the other convictions constituted harmless error. This court has summarized the salient facts in this case as follows:

> Mr. Walter Pinson runs a variety store in Birmingham, Alabama.[6] He contracted with the United States Post Office Department that a part of his store be set aside as a postal contract station to handle stamps, packages and money orders. These items are supplied to him by the Post Office Department, to whom Pinson reports and accounts.
>
> In early March, 1970, this building, including the portion which houses the postal facilities, was burglarized. The Post Office safe was ripped open and 622 dollars in postal stock and 208 blank money orders were taken. A single finger-

print, later determined to be Gibson's, was obtained from the cash box, which had been removed from the safe.

After his arrest in Montgomery, Alabama, following an attempt to cash a stolen money order, a complete set of Gibson's fingerprints were taken. These prints were sent to the Office of the Chief Postal Inspector. There, a fingerprint expert compared these exemplars with the latent print found on the cash box. At trial the expert testified that the clandestine print matched the left thumb print of the fingerprint card sent to him by the Montgomery police. In addition to this expert testimony, the Government introduced a number of other witnesses. These included store owner Cohen, who testified that Gibson cashed one of the stolen money orders in his store. Willie White, whose name appears on the negotiated money order as the payee and the endorser, testified that he had not signed the stolen money order and that he had lost his driver's license. Witness Kelly testified that Gibson attempted to have her alter the address of a driver's license issued to a Willie White and that Gibson was in possession of a number of money orders.

444 F.2d 276–77.

Against the advice of his attorney Gibson took the stand.[7] He denied having been in Cohen's store after Christmas of 1969, having ever seen Kelly or having ever signed the name Willie White. The prosecutor

---

5.  At this hearing counsel stated:

    The next proceeding, criminal proceeding, in which the defendant was represented by counsel was involved with the State of Pennsylvania, and it is the position of the defendant that he was paroled, and under the law of Pennsylvania, after expiration of, I believe, a year or two after the parole, it becomes a pardon. And we request that the District Court consider the pardon as a mitigating factor on the adjudication of guilt in the Pennsylvania proceeding. There—the Pennsylvania proceeding did involve representation by counsel.

6.  Gibson testified that he had been in this store a number of times. (R. 215, 226).

7.  Counsel's advice to petitioner on this matter was brought to the attention of the court. The following exchange occurred:

    THE COURT: I think this is proper to go in the record, and correct me if I am wrong so we can take it out. That you have advised the court, Mr. Wallis, that you have advised your client not to take the stand due to the circumstances in this case and due to his long prior record that he has indicated he is not going to follow your advice and that we have all agreed that it would be very unwise for you to go any further than merely to advise him that if he wishes to take the stand, you are going to let him do it.
    MR. WALLIS: That is a fair statement of the facts.
    (R. 213).

**560**

then cross-examined Gibson. At the end of his examination he asked the petitioner if he had any prior felony convictions.

In *Zilka* we stated that "[i]n fully examining the extent of the error, we look also to petitioner's testimony, for the effect of impeachment." 529 F.2d at 392. Here, we find that the effect of the prior counselless convictions was negligible at best. The case against Gibson did not depend upon testimony by a single witness but instead consisted of testimony by a number of witnesses [8] and proof that petitioner's fingerprint was on the cash box removed from the burglarized Post Office safe. Gibson's testimony merely consisted of denials of the facts testified to by eyewitnesses against him and undisputed physical facts. In our opinion the real damage to Gibson's credibility came, not from the use of the invalid convictions but from his own lips, when he attempted to convince the jury that he had never seen Ms. Kelly and had not been in Mr. Cohen's store in 1970, and contradicted the other witnesses.

In an effort to distinguish the instant case from *Zilka,* petitioner points to language in that decision stating that "[s]imilar crimes would, of course, have a much greater impact upon the jury." 529 F.2d at 393. While the statement is essentially accurate, its language cuts both ways in Gibson's case. The fact that petitioner's 1967 and 1964 convictions were for burglary was mentioned before the jury. The type of offense for which petitioner was convicted in 1943 was never revealed, leaving only the questionable Pennsylvania offense for breaking and entering and the 1944 Alabama offense of burglary to come to the jury's attention. Thus, in light of the fact that two valid burglary convictions were properly before the jury, we consider the effect of the invalid convictions on petitioner's credibility to be at most only cumulative.[9] The two valid similar convictions were more than sufficient to impeach testi-

mony which even standing alone was lacking in credibility.

In view of the overwhelming evidence of petitioner's guilt we find that the jury would have rendered a verdict against him in the absence of the invalid convictions and that the use of such convictions in the circumstances presented by this case was harmless error beyond a reasonable doubt.

AFFIRMED.

---

8. This court, in *Zilka,* distinguished that case from *Loper v. Beto, supra,* on the grounds that the case against Zilka "did not rest upon the word of a single conflicting witness so that the

impeachment could not have such disastrous consequence." 529 F.2d at 393.

9. *See Chapman v. United States,* 547 F.2d 1240, 1241 n.1 (5th Cir. 1977).