**Alfred Eugene GRIZZELL, Petitioner-Appellee,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Corrections, Respondent-Appellant.**

No. 81–5044.

United States Court of Appeals, Eleventh Circuit.

Nov. 29, 1982.

18. Tr. at 22.

Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, Fla., for respondent-appellant.

Howard W. Skinner, Asst. Fed. Public Defender, Jacksonville, Fla., for petitioner-appellee.

Appeal from the United States District Court for the Middle District of Florida.

Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN *, District Judge.

RONEY, Circuit Judge:

This case turns on whether a state prosecutor's cross-examination of a defendant as to prior counselless felony convictions, admittedly a due process violation, constituted harmless error. The state courts held it to be harmless error. The federal district court held it was not and granted the petition for writ of habeas corpus under 28 U.S.C.A. § 2254. We affirm.

The question as to prior convictions was propounded on cross-examination when the petitioner was testifying to an alibi which, if believed, would have put him in a different city at the time of the crime. Alfred Eugene Grizzell was convicted in 1964 of robbing a lounge and package store in Jacksonville, Florida. At trial three witnesses placed him in the immediate vicinity of the crime. One witness, a clerk at the lounge,

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

was present during the robbery. Another witness, also an employee, saw petitioner make a purchase on the day in question but did not witness the robbery. The third witness was a customer at the store immediately prior to the robbery. Because the incident appeared suspicious to him, the third witness had made a mental note of the license plate number of an automobile parked at the store just before the robbery. It was later determined that the automobile was owned by petitioner's brother, his co-defendant.

Grizzell presented an alibi defense, claiming mistaken identity. He testified he was in Tampa and not with his brother in Jacksonville, introducing into evidence a check-in receipt from a Tampa motel dated the day of the robbery. The owner of the motel identified her signature on the registration receipt, but testified she could not recall what time petitioner checked into the motel. Other defense witnesses stated they saw petitioner at the Tampa motel the morning after the robbery.

Testifying in his own behalf, petitioner suggested the identifying employees' statements were attributable to their recognition of him from previous occasions on which he had made deliveries to the lounge while employed by a distributor, rather than their recognition of him from the robbery.

The following exchange occurred during the prosecutor's cross-examination of petitioner:

Q Have you ever been convicted of a crime?

A Yes, sir.

Q How many times?

Mr. Richardson: Objection, Your Honor.

Mr. Palmer: Objection, Your Honor.

Court: Objection sustained.

Mr. Nichols: No further questions.

Mr. Palmer: No further questions.

The prosecutor made no other efforts to impeach Grizzell's testimony by showing prior criminal convictions. At the conclusion of trial, the judge instructed the jury as follows:

Now, while the defendants were on the stand one of the defendants, Alfred Grizzell, was asked whether he had previously been convicted of a crime and he testified that he had. Now, Gentlemen, you will not consider the testimony that he had been previously convicted of a crime in any wise as evidence of his guilt or innocence of the charge on which he is now before you being tried. This is permitted to go before you solely as it affects his credibility as a witness and as it goes to his veracity or his truthfulness as a witness and nothing else.

The prior convictions used to impeach Grizzell's credibility subsequently were set aside by the state imposing them because they were obtained without affording him the right to counsel. Pursuing his state remedies in this case, Grizzell moved to vacate and set aside his conviction under Rule 3.850 of the Florida Rules of Criminal Procedure, that state's post-conviction relief statute. The state court judge denied the collateral attack. He determined that the effect on the jury of the question and answer regarding the invalid convictions was "minimal or non-existent," that the outcome of petitioner's trial "could not reasonably be thought to be changed" even if the question and answer had been excluded, and that there was "substantial evidence" remaining to support the conviction. A second state court judge echoed these conclusions in denying Grizzell's petition for rehearing.

In federal court Grizzell argued that the admittedly unconstitutional use of his prior counselless convictions to impeach his credibility was not harmless error.

 The State initially contends that Grizzell's claims were not cognizable in a federal habeas corpus proceeding because there was a failure to object to the question and jury instruction, which then became nonreviewable under Florida's contemporaneous objection rule. Since the fact that prior convictions were without counsel is peculiarly within the knowledge of a defendant, we would be inclined to strictly enforce the contemporaneous objection rule

as to such claims. We are bound by our former decisions, however, which hold that when a state court does not apply the contemporaneous objection rule to reject a federal constitutional claim, but instead reaches the merits of the claim, then a federal habeas court also must address the merits. *Thomas v. Blackburn,* 623 F.2d 383, 386 (5th Cir. 1980), *cert. denied,* 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981), and cases cited therein. *See County Court of Ulster v. Allen,* 442 U.S. 140, 152–54, 99 S.Ct. 2213, 2222–2223, 60 L.Ed.2d 777 (1979). Here the state courts did not apply the contemporaneous objection rule in denying the collateral attack, even as an alternative ground of decision. They concluded that the improper impeachment had a minimal or nonexistent impact on the jury and there was substantial evidence to support the verdict, thus reaching the merits of Grizzell's claim.

The State next argues that the district court did not give proper deference to the state court determination that the constitutional error was harmless. Neither the magistrate's report and recommendation nor the district court's order contain any reference to the state court decisions denying collateral relief. While the State admits in its brief that the federal court was not bound by the decision of the state court judges, it goes on to argue that "it is precisely this type of disregard of state court findings without stating any reason therefor that mandated the result reached in *Sumner v. Mata,*" 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), intimating that the district court erred in not following the state court determination.

The extent of deference owed by the district court to the state courts' conclusions regarding the existence of harmless error under the federal Constitution depends on whether the determination is a question of fact, rather than a question of law or a mixed question. *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam); *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *See* 28 U.S.C.A. § 2254(d).

From decisions in areas involving other types of constitutional errors, it appears that the existence of constitutional harmless error is a mixed question of law and fact because it requires "the application of constitutional principles to the facts as found." *See Brown v. Allen,* 344 U.S. 443, 507, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.). *See also Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (constitutionality of pretrial identification procedures); *Cuyler v. Sullivan,* 446 U.S. at 342, 100 S.Ct. at 1714–1715 (whether lawyers engaged in multiple representation); *Dickerson v. Alabama,* 667 F.2d 1364 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982) (whether statements by defendant's counsel were sufficiently definite to constitute a request for a continuance); *Washington v. Watkins,* 655 F.2d 1346 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982) (whether defendant enjoyed effective assistance of counsel); *Lee v. Hopper,* 499 F.2d 456, 462 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650 (1974) (whether defendant had effective assistance of counsel and entered guilty plea voluntarily).

Regardless of which court system initially decides the matter, state or federal, the ultimate determination of whether federal constitutional error is harmless is a federal question. *Chapman v. California,* 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967). Although deference should be paid to the state courts' evaluation of how proceedings in court might affect the jury, that deference must give way when the state court decision cannot be reconciled with federal constitutional law. *See Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982); *Cuyler v. Sullivan,* 446 U.S. at 341–42, 100 S.Ct. at 1714–1715. The differences between the state and federal courts in this case did not involve purely factual questions. The constitutional error was clear. *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), held a due process violation occurs when prior counselless convictions, constitutionally in-

valid under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), are used to impeach a defendant's credibility if their use might well have influenced the outcome of the case. *See Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

Trying to articulate fixed principles for a harmless constitutional error determination is difficult in the context of cases like this. The approach has been to cast on the state the burden of showing harmless error, once the improper testimony is used. The key inquiry becomes whether the error was harmless beyond a reasonable doubt within the meaning of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1976). *Jones v. Estelle,* 622 F.2d 124 (5th Cir.), *cert. denied,* 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed.2d 295 (1980).

Sometimes the decision is made easier because the defendant had a record of constitutional convictions as well as the improperly used unconstitutional ones, so that impeachment by use of prior convictions would have been available to the state. *Gibson v. United States,* 575 F.2d 556 (5th Cir.), *cert. denied,* 439 U.S. 898, 99 S.Ct. 263, 58 L.Ed.2d 246 (1978), and *Jones v. Estelle, supra,* involved the impeachment of a defendant's testimony by the use of several prior convictions, some of which were without counsel and therefore invalid, and some of which were valid. The former Fifth Circuit held the use of the counselless convictions was harmless error in each case, given the presence of the valid convictions. *Gibson v. United States,* 575 F.2d at 559; *Jones v. Estelle,* 622 F.2d at 126. In this case, however, only constitutionally invalid convictions were used.

■ We have previously articulated this approach: if, upon a reading of the trial record, the court is firmly convinced the evidence of guilt was overwhelming and the jury would have reached the same verdict without the tainted evidence and that there is no reasonable possibility the constitutionally infirm evidence might have contributed to the conviction, then the error is deemed harmless. *Zilka v. Estelle,* 529 F.2d 388, 392 (5th Cir. 1976).

■ In this case it is clear that if Grizzell's testimony is believed, he was not physically present when the crime was committed. The alibi demonstrated no internal inconsistencies. It was supported to a degree by the innkeeper's testimony. It was not implausible. In this respect, Grizzell's case resembles that of *Potts v. Estelle,* 529 F.2d 450 (5th Cir. 1976). There the object of the appellant's collateral attack on his state murder conviction was the prosecution's use of ten previous counselless misdemeanor convictions to impeach his self defense testimony.

Discussing the state's contention that the use of the misdemeanor convictions constituted harmless error, the former Fifth Circuit noted:

> The success of appellant's testimony hinged in large measure on the credibility assessment made of him by the jury. The State's use of the misdemeanor convictions went, of course, directly to the question of appellant's credibility. We reject the State's argument that introduction of the nine uncounseled misdemeanor convictions was harmless error beyond a reasonable doubt.

529 F.2d at 455 (citations omitted).

So it is here. We are not unmindful of the substantial evidence placing Grizzell at the scene of the crime. As noted in previous cases, however, the question is not "whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of . . . ," but whether the evidence complained of may have influenced the factfinder's deliberations. *Harryman v. Estelle,* 597 F.2d 927, 929 (5th Cir. 1979), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980) (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 11 L.Ed.2d 171 (1963)).

This case differs in at least two respects from *Zilka v. Estelle,* 529 F.2d 388 (5th Cir. 1976), which held a similar error harmless. *First,* in *Zilka* neither the attorneys nor the judge commented on the use to which the evidence could be put. Here, the judge

specifically instructed the jury that it could use the evidence to evaluate credibility, an instruction we must presume was heard and followed. We do not rely on the testimony that the prosecutor commented on the prior convictions in closing argument. Petitioner testified that the prosecuting attorney had said: "Let's keep these robbers off the street. This man Alfred Grizzell has been convicted of every crime in the book. He is wanted in Volusia County for kidnapping and armed robbery and he is suspected in West Virginia of Murder. How can you people believe this man here?" The prosecutor did not recall making that statement. Without a clear finding by the district court on this fact, we do not rely on it for decision.

*Second,* petitioner's testimony here was not implausible as it was in *Zilka.* Zilka's testimony corroborated the state's case in some respects and was directly contrary to the physical evidence in others. The story was patently implausible and could not reasonably have been accepted by the jury in the face of all other evidence. Here, the problem is with identification testimony, not with the physical acts concerning the crime. Acceptance of Grizzell's testimony could be rationalized on the ground that the other witnesses simply were wrong in identification. It would not require a determination that those witnesses were intentionally lying.

Whether the jury would believe Grizzell, no one can tell. But he was entitled to have his testimony weighed by the jury unencumbered by the unconstitutional convictions. The jury was instructed specifically that the convictions could be used to evaluate his credibility. The district court correctly decided that there is a reasonable possibility that the constitutionally infirm evidence might have contributed to the jury's decision as to credibility, and hence to the conviction.

AFFIRMED.