Henry BROWN, Petitioner-Appellee,

v.

Richard L. DUGGER, as Secretary, Department of Corrections, State of Florida, Respondent-Appellant.

No. 85–6082.

United States Court of Appeals, Eleventh Circuit.

Nov. 13, 1987.

Michael J. Neimand, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for respondent-appellant.

Karen M. Gottlieb, Office of Public Defender, State of Fla., Miami, Fla., for petitioner-appellee.

Before CLARK, EDMONDSON and KEITH *, Circuit Judges.

KEITH, Circuit Judge:

Richard L. Dugger, Secretary of the Florida Department of Corrections (hereinafter referred to as "the state"), appeals the district court's grant of habeas corpus relief to petitioner Henry Brown ("petitioner"). We affirm.

## I.

## PROCEDURAL HISTORY

On October 10, 1973, petitioner was charged with first degree murder. The first trial ended in mistrial after the jury was unable to reach a verdict. At the end of the second trial, the jury found petitioner guilty of first degree murder and recommended a life sentence. The trial court imposed the death sentence. The Florida Supreme Court affirmed petitioner's conviction, but ordered the sentence reduced to life imprisonment with a minimum mandatory term of 25 years.

Pursuant to 28 U.S.C. § 2254, petitioner petitioned for a writ of habeas corpus in the United States District Court for the Southern Division of Florida. The magistrate recommended denial of the petition noting that the trial court only committed harmless error. Although the district court initially denied petitioner's habeas petition, it later granted the writ in response to a motion for reconsideration finding that the petitioner's claims were of constitutional magnitude. After the state appealed the grant of the writ, an initial panel of this circuit vacated the district court's order and remanded. The Honorable Walter E. Hoffman, writing for the court, stated "that a federal court, in granting a writ of habeas corpus, must explain why the statutory presumption of correctness of State Supreme Court findings does not apply in the light of the factors listed in 28 U.S.C. § 2254(d)." [1] *Brown v. Wainwright*, 772 F.2d 780, 781 (11th Cir.1985). On remand,

* Honorable Damon J. Keith, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. 28 U.S.C. § 2254(d) outlines eight factors which give federal courts guidance as to criteria which should be examined when habeas relief is granted. § 2254(d) provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the *judgment of the State court, a determination after a hearing on the merits of a factual issue,* made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, *shall be presumed to be correct,* unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes tht such factual determination is not fairly supported by the record; And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted

the district court again granted the writ: this time, however, the court fully explained its holding and reasoning.

## II.

### FACTS

The Supreme Court of Florida fully sets forth the facts:

On August 3, 1973 Abraham Goldstone drove to a shopping mall to cash a social security check. When he failed to return, his wife reported him missing. That evening a police officer saw five young men pushing a car later identified as belonging to Goldstone. All fled when the officer approached, but he caught up with two and they in some manner implicated Brown [petitioner]. The car was impounded, and an examination disclosed Goldstone's bankbook in the trunk, scuff marks on the interior of the trunk, bloodstains and bloodstained towels in the car, and at least one fingerprint later identified as Brown's. In the early morning hours of August 4, officers went to Brown's home, informed his father of their purpose, told Brown his rights, and questioned him. He admitted possession of the car and said he got it from Steve Benyard. Brown was then arrested for possession of a stolen car. After Brown was released, officers developed additional data linking Brown to Goldstone's disappearance and, after again informing Brown of his rights, they questioned him further. He amplified his earlier statement by revealing that he had come across Benyard and Mack Simmons with the car in a school parking lot and that Benyard had said he

obtained it at the Sky Lake shopping mall in North Miami Beach.

In the due course of investigation officers discovered Goldstone's body at a small lake near the shopping mall. Goldstone had died from drowning, but his body showed that he also had been shot in the shoulder and hit about the head.

The state's chief witness was homicide detective Dallas. He testified at trial that he had arranged for a confrontation between Mack Simmons and petitioner. Dallas stated that he told both youths about their *Miranda* rights and that they indicated that they understood those rights. Dallas further stated that when Simmons was asked whether petitioner was involved in Goldstone's murder, he answered "Yes." [2] Dallas also testified that immediately following the accusation, he had had Simmons removed from the room approximately two minutes after Simmons made the accusation; and that during this time petitioner remained silent.

Dallas further testified about an oral inculpatory statement which petitioner made after the confrontation with Simmons. Specifically, Dallas stated that after a further period of silence, Simmons was taken from the interrogation room and petitioner was again informed of his right to remain silent. Petitioner then confessed to his role in the murder. Petitioner's admission was received into evidence over the objection of defense counsel who questioned the voluntariness of the statement.

During the closing argument, the prosecution summarized the confrontation for the jury.[3] Although defense counsel objected and moved for a mistrial, noting Simmons' absence at trial, the trial court

---

by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.
(Emphasis added.)

**2.** At trial, this statement was introduced by interrogating Officer Dallas, over objection by the defense on the ground that the statement was

inadmissible hearsay. The trial court admitted Simmon's statement as an exception to the hearsay rule, because petitioner was present when Simmons spoke. Although the Florida Supreme Court found that the testimony was not hearsay, the court affirmed the conviction because it held that the accusation testimony was admissible as an operational fact.

**3.** The prosecution stated that petitioner's silence, after Simmons implicated him, was just as much an admission of guilt as everything else he said.

responded that either side could have subpoenaed any witnesses. The defense objection to this comment was overruled, as was the repeated request for a mistrial.

As a basis for his federal habeas petition, petitioner argued that the introduction of inculpatory hearsay testimony at his state trial, as well as comments made by the prosecutor and the trial court regarding the testimony, violated the confrontation clause of the Sixth Amendment, the self-incrimination clause of the Fifth Amendment and the due process clause of the Fourteenth Amendment.

## III.

### DISCUSSION

At the outset, we note that this is the second time that a panel of this circuit has analyzed the issues in this case. The initial panel found that the district court did not supply adequate reasoning for its decision. *Brown v. Wainwright*, 772 F.2d 780, 782 (11th Cir.1985) (citing *Sumner v. Mata*, 449 U.S. 539, 551–52, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981) (holding that a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present)). Consequently, Judge Hoffman, writing for this court stated:

> Brown assigned five specific errors in objecting to the magistrate's recommendation, but the court does not address these objections. We cannot determine how the district court arrived at its con-

clusion. Two especially critical omissions require attention. First, the district court should supply reasons supporting a determination of whether the prosecution's remarks in closing argument were invited by defense counsel's remarks. Second, the court should provide a rationale supporting its finding of no harmless error by the trial court. Finally, the court may wish to examine recent Supreme Court decisions for their potential applicability to the issues presented in this case.

*Brown*, 772 F.2d at 783. Although the initial panel held that the district court did not follow the clear mandate in *Summer*, we believe the district court on remand correctly analyzed the issues in this case.

### A. Petitioner's Assignment of Error

The initial panel in this case noted that it could not determine how the district court arrived at its conclusion to grant the writ because Judge Hastings did not, in his first opinion, address petitioner's objections.[4] The district court on remand once again granted the writ. The district court found that Detective Dallas' testimony concerning the Simmons accusation was hearsay and violative of the confrontation clause. The district court also held that all other claims must be viewed in light of the initial hearsay error. Upon independent review of the record, the district court found that the trial court errors were of constitutional magnitude.

---

**4.** Petitioner assigned five specific errors in objecting to the magistrate's recommendation, but the district court in its first opinion did not address these objections. Petitioner's claims were:

First, the state elicited hearsay testimony regarding a police-staged confrontation between petitioner and an alleged accomplice, Mack Simmons, during which Simmons implicated petitioner in the homicide. Second, the trial court thereafter stated, in the presence of the jury, that the hearsay accusation was admissible, over defense counsel's confrontation objection, since petitioner had been present at the time it was made. Third, defense counsel's cross-examination of Detective Dallas regarding the motive for the Simmons accusation, and most specifically, the fact that petitioner had been inculpated in an attempt by

Simmons to negotiate a plea bargain was subsequently limited by the trial court. Fourth, the prosecutor, in closing argument, utilized the Simmons confrontation and accusation of petitioner as substantive evidence of petitioner's guilt and further asserted that petitioner's silence in response to that accusation was the equivalent of an additional confession by petitioner. And finally, the trial court delivered a "curative" instruction, when defense counsel in closing argument asserted the significance of Simmons' absence at trial, that such argument should be disregarded since the defense as well as the state could have subpoenaed any desired witness.

Although the district court did not analyze the above claims in the same order, the court did address each of petitioner's issues.

The constitutional claims argued by petitioner were predicated upon five interrelated, but distinct parts.[5] We believe the district court correctly analyzed petitioner's constitutional claims.

The district court first held that the admission of hearsay testimony regarding the accusation of petitioner by the alleged accomplice, Mack Simmons, violated petitioner's right of confrontation.[6] The court ruled that the trial court's admission of the hearsay testimony of Detective Dallas, on the ground of petitioner's presence at the accusation, was untenable, for "the concept of silent adoptive admissions is contradictory to the right to remain silent guaranteed by *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966)." The court noted that the state supreme court had also found "that the trial court had erroneously admitted the Simmons accusation in contravention of *Miranda, Brown v. State,* 367 So.2d 616, 624 (Fla. 1979)." However, the state supreme court held that the accusation testimony was admissible under the theory of "relevant operative fact." The district court explained:

> The state court's admissibility finding is a determination of law and fact as to which no statutory presumption of correctness attaches. *See, Cuyler [v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980)]. This Court found that retroactive admissibility of the evidence of a non-hearsay purpose, when the trial judge admitted the testimony for its truth was effectively unfair. *United States v. Kaplan,* 510 F.2d 606, 612 (2d Cir.1974).

The jury was permitted to consider the *Simmons* accusation for its truth, the prosecutor was permitted to argue its truth, and no limiting instruction regarding the purpose of the accusation was ever given. None of these prejudicial occurrences would have been allowed had the testimony been admitted only for the non-hearsay purpose upon which the state supreme court retroactively found it admissible. *Cf. Tennessee v. Street,* [471 U.S. 409, 413–14, 105 S.Ct. 2078, 2081, 85 L.Ed.2d 425] (1985)....

In *Tennessee v. Street,* the Supreme Court held that the nonhearsay aspect of the accomplice's confession raised no Confrontation Clause concerns. The Court indicated that no confrontation violation was posed where a co-defendant's statement was allowed into evidence for a non-hearsay purpose and the jury was amply instructed about the limited purpose of the statement and the prosecutor never asserted its truth. *Id.* However, in the present case the state injected the error into the trial proceedings, and the accusation was admitted and argued for its truth.

Generally, in order to avoid a confrontation problem by the introduction of hearsay testimony, the prosecutor must either produce or demonstrate the unavailability of the declarant whose statement he wishes to use against the defendant. *Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980). In the instant case, the district court aptly found a violation of the confrontation clause because: (1) the record failed to demonstrate that the prosecution made the required good faith effort to secure the presence of Simmons at trial. *Id.* at 74, 100 S.Ct. at 2543, (2) even if the declarant was unavailable, the state never demonstrated the declarant's reliability as required by *Ohio v. Roberts;* or "the custodial interrogation and inculpation of a co-defendant was one where reliability should be questioned. *See United States v. Sarmineto–Perez,* 633 F.2d 1092, 1102 (5th Cir.

---

**5.** Petitioner alleged that he was denied the right of confrontation, the right to be free from self-incrimination and the right to due process of law. The focal point of the constitutional errors was the initial confrontation violation by the prosecutor during the direct examination of state witness Detective Wesley Dallas.

**6.** This testimony was ruled admissible by the trial court, over hearsay and confrontation objections, as an exception to the hearsay rule since petitioner had been present when the accusation was made. The Florida Supreme Court recognized the error of this ruling, but also missed the confrontation question by holding that the testimony was not admitted for truth, but to prove the operative fact of why petitioner thereafter confessed.

1980)."[7] Thus, we agree that the introduction of the hearsay testimony constituted a constitutional violation of petitioner's right to confrontation.[8]

■ The district court next addressed the limitation of the defense's cross-examination regarding Simmons' motive for implicating petitioner and the exacerbating remarks of the trial judge before the jury. Since the state supreme court, due to its failure to find a confrontation violation, had failed to consider the merits of petitioner's claim, the district court found no statutory presumption of correctness applicable:

> Where, as in this case, "the decision of the state trier of fact may rest upon an error of law rather than an adverse determination of the facts," it cannot be presumed that the merits of the dispute were resolved in the state court proceedings. *Townsend v. Sain*, 372 U.S. 293, 314 [83 S.Ct. 745, 757, 9 L.Ed.2d 770] (1963). Where the state court did not apply the proper standard, the statutory presumption of correctness does not attach. *See Harris v. Oliver*, 645 F.2d 327, 330–31 (5th Cir.1981), *cert. denied*, 454 U.S. 1109 [102 S.Ct. 687, 70 L.Ed.2d 650] (1981).

The district court held that the limitation of defense counsel's cross-examination was a violation of the rule of *Davis v. Alaska*, 415 U.S. 308, 317–18, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974) (holding when cross-examination is unduly restricted, a constitutional error results). Specifically, the district court found that the cross-examination of Simmons was especially important because Simmons' testimony may have been biased by his efforts to obtain favorable treatment by the authorities. *United States v. Crumley*, 565 F.2d 945, 949 (5th Cir.1978). *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *Bruton v. United States*, 391 U.S. 123, 126–27, 88 S.Ct. 1620, 1622–23, 20 L.Ed.2d 476 (1968). The district court thus correctly concluded:

> By limiting defense counsel's cross-examination into any motive Simmons may have had to implicate Petitioner, the trial judge denied Petitioner the only means of challenging the reliability of the accusation.

The district court then found that the above errors were compounded by statements by the trial judge. First, the trial judge exacerbated the prejudice from the erroneous introduction of the hearsay accusation by stating in the presence of the jury that the accusation was admissible because petitioner was present when it was made. The district court correctly held that "[t]his comment could have suggested to the jury that some special probative significance could or should be inferred from petitioner's presence at the out-of-court confrontation." Second, the district court held that the trial judge's instruction, that the jury should disregard the defense closing argument in which counsel had pointed out that Simmons was not called as a witness, intimated that the defense could have called Simmons to refute the accusation, and provided the state with "the benefit of Simmons' testimony while insulating

---

7. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), this Court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

8. We note that the state concedes for the first time on appeal the confrontation violation—that the admission of Simmons accusation for its truth through the testimony of Detective Dallas violated the hearsay rule and petitioner's right of confrontation. The state now argues that the violation was not preserved by timely objection and is therefore waived. We disagree. First, there is authority in this circuit that it is the state's claim of waiver which has not been preserved by timely assertion, since it was never presented to the district court. *See Boykins v.*

*Wainwright*, 737 F.2d 1539, 1545 (11th Cir. 1984), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985) (holding state's failure to raise in district court arguments that petitioner had both failed to exhaust State remedies with regard to constitutional claim and *waived that claim* through procedural default *barred state from prevailing on that claim* in the Court of Appeals). Second, the trial transcript reflects that defense counsel injected a specific objection predicated upon hearsay and confrontation grounds prior to the introduction of the Simmons accusation, and that the trial judge ruled on the merits of the objection. Thus, it was proper for the district court to consider the substance of petitioner's federal claim.

him from cross-examination." We believe, as the district court held, that the prejudicial defect in disallowing the defense closing argument is not satisfactorily remedied by asserting that petitioner could have called Simmons as his own witness. *See United States v. Check*, 582 F.2d 668, 683 (2nd Cir.1978). Consequently, we agree with the district court that the trial judge's instruction was premised on an erroneous standard of law and is not entitled to any presumption of correctness.

## B. Prosecutor's Closing Argument

■ On remand, the district court was specifically required to "supply reasons supporting a determination of whether the prosecutor's remarks in closing argument were invited error by defense counsel's remarks." The district court found that the invited error doctrine was not available to the state. It, therefore, concluded that petitioner's fifth amendment rights were violated when the prosecutor's closing argument included comments on petitioner's silence after Simmons' accusation.[9] The court then analyzed the finding of the state supreme court that the fifth amendment violation had been invited:

> The initial error in petitioner's trial occurred when the prosecutor elicited the hearsay accusation. Any subsequent cross-examination and argument by defense counsel must be seen as an attempt to ameliorate the prejudice stemming from the constitutional violation. The state court's finding of invited error was tainted by the erroneous standard used in determining who first committed constitutional error at trial and therefore the presumption of correctness is not operative. *See Rogers v. Richmond*, 365 U.S. 534, 545–47 [81 S.Ct. 735, 741–43, 5 L.Ed.2d 760] (1961); *Harris v. Oliver*, 645 F.2d 327, 330–31 (5th Cir.), *cert. denied*, 454 U.S. 1109 [102 S.Ct. 687, 70 L.Ed.2d 650] (1981).

The district court explained that the state court finding that petitioner's counsel had first elicited testimony regarding silence was not fairly supported by the record. According to the district court's own reading of the record, it had been the prosecutor who elicited testimony about petitioner's silence, eliciting from Detective Dallas the response that he did not recall whether petitioner had said anything after the accusation. The district court thus found that once the initial evidence was improperly admitted, petitioner was entitled to offset the prejudicial effect. *See United States v. Puco*, 453 F.2d 539, 541 n. 4 (2nd Cir.1971), *cert. denied*, 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973).

We believe the record and case law support the district court's rationale that the prosecutor's remarks in closing argument were *not* invited by the defense counsel. Defense counsel's immediate objection to the closing argument was overruled, and the prosecutor was permitted to culminate his closing argument with the depiction of the confrontation scene, and to buttress the admissible evidence of guilt with the constitutionally inadmissible evidence of both the Simmons accusation and the assertion of petitioner's silence in the face of that accusation as the equivalent of an additional confession. Thus, the district court adequately supplied reasons for its determination that the prosecutor's argument that petitioner, by remaining silent, had not acted as an innocent person "is violative of petitioner's Fifth Amendment right against self-incrimination."

## C. Harmless Error

The district court was also specifically required to provide a rationale supporting its finding of no harmless error by the trial court. On remand the district court noted that the pertinent state court finding was

---

**9.** The prosecutor had argued in closing argument that petitioner's silence in the face of the accusation was inconsistent with innocence. Based on the prosecutor's argument, the district court concluded that the prosecutor's assignment violated petitioner's fifth amendment right against self-incrimination. We believe the district court was correct in holding that "the state court's finding that petitioner's counsel first elicited testimony regarding petitioner's silence is not fairly supported by the record and thus outside the statutory presumption of correctness, pursuant to 28 U.S.C. § 2254(d)(8)."

tainted by virtue of that court's operative-fact and invited error analysis,[10] and that the determination whether the constitutional violations were harmless raised a mixed question of law and fact. The court then found that state had failed to demonstrate beyond a reasonable doubt that the errors had not contributed to the jury's verdict by influencing it to accredit petitioner's inculpatory statements. The court, therefore, concluded that the constitutional violations were not harmless errors.

 The "harmless beyond a reasonable doubt" standard, elucidated in *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), presumes prejudice and places the burden, as did the district court, on the beneficiary of the errors to prove beyond a reasonable doubt that the errors did not contribute to the verdict. *Id.* at 24, 87 S.Ct. at 828; *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *Hutchins v. Wainwright,* 715 F.2d 512, 517 (11th Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984); *Grizzell v. Wainwright,* 692 F.2d 722 at 726. If there remains a possibility that the constitutionally-proscribed evidence impacted on the ultimate decisional process of the jury, if the beneficiary of the error cannot refute that possibility beyond all reasonable

doubt, constitutional errors can never be deemed harmless. *Hutchins v. Wainwright,* 715 F.2d at 517.

 As the district court correctly stated, the relevant inquiry for testing harmless error is set forth in *Grizzell v. Wainwright:*

> [I]f upon reading of the trial record, the court is firmly convinced the evidence of guilty was overwhelming *and* the jury would have reached the same verdict without the tainted evidence *and* there is no reasonable possibility the constitutionally infirm evidence might have contributed to the conviction, then the error is deemed harmless. (citation omitted). (emphasis added).

*Id.* at 726. The district court, in applying the *Grizzell* standard found:

> [T]hat it was entirely possible that the hearsay accusation of Simmons, compounded by the curtailment of defense counsel's cross-examination regarding the declarant's motive, and further exacerbated by the prosecutor's assault on petitioner's right to remain silent during closing argument and the trial judge's comments and instructions regarding the accusation, could have influenced the jury to give credence to petitioner's two oral statements, which petitioner contended were not voluntarily given.[11]

---

**10.** Because the state court found no constitutional violations by virtue of its operative-fact admissibility and invited error analyses, the state court never addressed the issue of harmlessness. Thus, the district court held that no state presumption of correctness is relevant here since the state court never fully addressed the harmless error issue.

**11.** The state's case was comprised mainly of petitioner's statements to the police, the voluntariness of which was a pivotal issue at trial. The evidence presented established that the statements were elicited on the sixth interrogation of the 16 year old petitioner, after he had been removed from school by a detective and questioned without the presence of his attorney. Cross-examination of Dallas revealed that the initial oral statement to which Dallas testified was taken during a 30 to 45 minute interrogation session following the confrontation. During closing argument, defense counsel emphasized the repeated coercive interrogation sessions, petitioner's consistent cooperation, the opportunities petitioner had to learn the facts from Benyard and Detective Dallas, and the

pressures exerted by Dallas upon the petitioner during the repeated questioning sessions without counsel. Counsel further argued the inconsistencies between the first oral statement to which Dallas testified and the transcribed statement, and between the statements and the physical evidence.

The crux of petitioner's defense was that the statements obtained were involuntary and unworthy of belief. Consistent with this theme, the jury was instructed that the statements should be received with "great caution," the jury could "believe any part of such a statement which you find to be true and reject those parts which you find to be untrue," that a "statement voluntarily made should be given fair and unprejudiced consideration with due regard to the time and circumstances under which it was made," and that a statement should not be considered "unless it was freely and voluntarily made." Consequently, we believe the likelihood that the jury would follow these instructions and consider the petitioner's defense at trial was undermined by the constitutional errors committed by the prosecutor and the trial court.

After reading the record we are not persuaded that evidence of guilt was overwhelming or that the jury would have reached the same verdict without the above "tainted" evidence. Furthermore, since there is a reasonable possibility that the impermissible evidence contributed to the conviction, we do not believe the errors were harmless. Thus, we hold that the district court correctly applied the *Grizzell* test in finding no harmless error.

Accordingly, we affirm the order of Honorable Alcee L. Hastings granting petitioner's habeas relief.

CLARK, Circuit Judge, concurring in part:

In this case, the court is confronted with a number of extremely difficult issues. While I agree with many of the conclusions in the majority opinion and I concur in its affirmance of the district court's judgment, my analysis of certain issues differs from that of both the majority and the dissent. As discussed below, I conclude that only one issue raised by the appellee, Henry Brown, merits the granting of the writ of habeas corpus. Because I cannot conclude that the error was harmless, I concur in the result reached in the majority opinion.

## I. IMPROPER LIMITATION ON CROSS EXAMINATION

In his petition for a writ of habeas corpus, the appellee Brown argued (and the district court agreed) that the state trial judge erred by limiting Brown's cross-examination of Detective Dallas about a possible deal between the state and Mack Simmons, who had confessed to participating in the murder. Dallas was allowed to testify about Simmons' accusation of Brown, but the trial judge denied defense counsel's probes into the possibility that Simmons made his accusations as part of (or in the hopes of) a deal for lighter treatment on Simmons' own murder charges. *See* Trial Transcript at 602–03. After the trial judge blocked his line of questioning, defense counsel made a proffer outside the presence of the jury to the effect that Simmons was arrested for the murder almost one

month before Simmons mentioned Brown's name as being involved in the crime, and that Brown's name was first mentioned in the context of attempts by Simmons' attorney to strike a deal with the state. *See id.* at 605–06. The trial judge stated that the defense counsel could, if he desired, ask certain limited questions about a possible deal. *See id.* at 607.

The judge continued, however, to rule that if the defense inquired further about a deal between Simmons and the state, the prosecution would be allowed to present evidence of earlier plea negotiations between Brown and the state; the state would also be allowed to bring in certain statements by Brown that had been successfully suppressed in pre-trial proceedings. *See id.* at 612–13. Faced with the alternatives set out by the trial judge, the defense counsel dropped his line of questioning. *See id.* at 614.

The trial court found the limitation on cross-examination and the Hobson's choice created by the trial judge to be "constitutional error of the first magnitude." Dist. Ct.Op. at 5. I agree. As the Supreme Court in *Davis v. Alaska* made clear, a "primary interest" secured by the Confrontation Clause of the Sixth Amendment is the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965)). An important component of the right of cross-examination is the right of a defendant to attempt to impeach, or discredit, his accuser. *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110. One specific type of attack on an accuser "is effected by means of cross-examination directed toward revealing possible biases, prejudices, or other ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* "It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness." *United States v. Crumley*, 565

F.2d 945, 949 (5th Cir.1978). The Supreme Court has recently reaffirmed the importance of full cross-examination by a defendant into the motives and possible biases of his accuser. *See Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

In light of these important confrontation rights, I agree with both the district court and the majority opinion that the state trial court erred in limiting defense inquiry into a possible deal between Simmons and the state. This conclusion is not disturbed by the fact that at one point in the testimony of Detective Dallas, he denied the existence of a deal. *See* Trial Transcript at 601–02. "[A] defendant's right to cross-examine a witness about any deals that may have been made or any understandings that may have been reached between the government and one of its witnesses does not hinge on whether *in fact* any such deals or understandings were effected." *United States v. Mayer,* 556 F.2d 245, 245 (5th Cir.1977). "Whether or not such a deal existed in not crucial." *Greene v. Wainwright,* 634 F.2d 272, 276 (5th Cir. Jan. 1981). What is important is the possibility that a witness is accusing an individual in an effort to please the prosecution. *Id.* " 'A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception.' " *Id.* (quoting *Burr v. Sullivan,* 618 F.2d 583, 597 (9th Cir.1980)). *See also United States v. Onori,* 535 F.2d 938, 945 (5th Cir.1976). In this case, the key accusation by Mack Simmons came at a time when Simmons was facing murder charges and, according to Brown's proffer, when Simmons was attempting to negotiate a deal. The fact that Detective Dallas testified that no deal existed does nothingto undercut the importance of an inquiry into Simmons' motives for accusing Brown of involvement in the murder.

Similarly, the fact that Simmons did not himself testify does not change the conclusion that the limitation on inquiry into Simmons' motives was error. The fact that Detective Dallas testified as to Simmons' accusation of Brown does not eliminate Brown's right to explore Simmons' biases. The dissent contends that Dallas's testimony about Simmons' motives would have been hearsay, and thus was properly excluded under Florida law. *See* Dissenting Op. at 1564. To adopt such an approach, however, would be to allow the state to present Simmons' accusation of Brown through the hearsay testimony of Dallas, and then turn around and prevent Brown from attacking the accusation because the attacks would be hearsay. As the state has already conceded, *see* Appellant's Brief at 18, Dallas's initial testimony of Simmons' accusation was improperly admitted in violation of Florida's hearsay rule. In light of that concession, that same hearsay rule cannot now be turned around to prevent Brown's attack on that improperly admitted testimony. I thus disagree with the dissent's argument that Brown's attempted cross-examination of Dallas on Simmons' motives was correctly excluded as hearsay.

I also disagree with the dissent's alternate argument, that there was no error because the trial court did state that Brown's counsel could in fact inquire about a possible deal. *See* Dissenting Op. at 1563. What the dissent acknowledges but does not address is the fact that the state trial judge made it clear that any further inquiry into a possible deal would "open the door" to a range of unrelated lines of questioning by the prosecution. The trial judge explicitly stated that if Brown inquired further about a deal with Simmons, then the state could present evidence about "the whole thing, everything," including evidence of *Brown's* plea negotiations with the state. Trial Transcript at 613. In other words, the judge tied Brown's attack on Simmons' accusation to Brown's foregoing of a right unrelated to Simmons' accusation. In order to inquire about a deal between Simmons and the state, Brown would have to give up his right, protected by Florida law, to avoid evidence of prior plea negotiations. *See* Fla.R.Crim.Pro. 3.171(d). Given these facts, it is constitutionally intolerable to force a criminal defendant to forego one of his rights in an

effort to protect another. In this case, there is no legitimate relationship between Simmons' motives at the time he accused Brown (which was *before* Brown was arrested) and any plea negotiations that Brown later conducted with the state. Not only are the two events (Simmons' accusation and Brown's plea negotiations) remote in time, they are also unrelated as far as Brown's right to probe Simmons' motives is concerned. The approach of the state trial court, implicitly approved by the dissent, would lead to a rule that one co-defendant cannot attempt to discredit the adverse testimony of another co-defendant without leaving himself open to a full discussion of prior plea negotiations. I cannot accept such a rule, and I cannot agree with the analysis of the dissent on this point.

In defense of the limitation on Brown's inquiry into Simmons' motives, the state presents in its brief another argument, which to the extent I understand it I find unpersuasive. The state argues (as discussed more fully below in relation to the admission of the hearsay itself) that it was the defense's strategy to have Simmons' accusation of Brown presented to the jury in order to be able to argue to the jury that Brown's confession was coerced. Although to some extent I agree with this part of the state's analysis (as discussed below), I cannot understand the state's contention that the strategy required that Brown forego attacking Simmons' accusation. *See* Appellant's Brief at 32. To the extent that the defense wanted Simmons' accusation of Brown before the jury, it obviously did not concede the *truth* of Simmons' accusation (thereby conceding Brown's guilt). The defense strategy, as I conclude below, included presenting Simmons' accusation not for the truth of the matter asserted but instead to show that Brown's confession was coerced. It is not at all inconsistent (as the state argues in its brief on appeal) for Brown to attack simultaneously the truth of Simmons' accusation and the voluntariness of Brown's confession. In fact if, as the state argues, the defense strategy by necessity included conceding the truth of Simmons' statements, then it seems to me that such a strategy

would verge on constitutionally ineffective assistance of counsel. The state would have the court hold that the defense necessarily conceded the truth of Simmons' accusation. I reject that analysis of the defense's strategy in favor of the more obvious and logical interpretation that the defense wanted Simmons' accusation before the jury (to prove coercion) but at the same time wanted to attack the truth of the accusation. It is not the first time that a party has presented or allowed the presentation of evidence just to turn around and demonstrate the falseness of the evidence. In this case, by allowing Simmons' accusation to come before the jury, Brown in no way gave up the right to attack the truth of that accusation or the motives of the accuser. I therefore cannot accept these arguments, presented by the dissent and the state, to excuse the unconstitutional limitation of Brown's right to probe Simmons' motives.

The constitutional analysis, however, cannot end at this point. As the Supreme Court held in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), Confrontation Clause violations of the type present here are subject to the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). After having reviewed the record, I cannot conclude that the Confrontation Clause violation was harmless. In *Van Arsdall*, the Supreme Court set out guidelines for the harmlessness analysis in Confrontation Clause cases:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony

of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. *Van Arsdall*, 106 S.Ct. at 1438. Applying these factors to this case leads to the conclusion that the constitutional error was not harmless beyond a reasonable doubt.

As Brown argued in his proffer outside of the presence of the jury, Simmons did not accuse Brown until almost one month after Simmons was arrested. According to the proffer, Simmons' attorney approached Detective Dallas in an effort to obtain favorable treatment of Simmons. In that context, Dallas first heard of Brown's alleged involvement in the murder. Allowing a full cross-examination inquiring into Simmons' motives for accusing Brown might easily have led the jury to doubt Simmons' accusation.

The other *Van Arsdall* factors also weaken a possible conclusion of harmlessness. In this case, Brown's confessions formed the center of the prosecution's case, yet Brown presented a quite plausible attack on the validity of those confessions. Simmons' accusation was the *only* additional testimony or evidence that linked Brown to the murder. Contrary to what is implied by the dissent, there is absolutely *no* physical or testimonial evidence that linked Brown to the murder. As the prosecutor told the jury in his opening argument, "you will not hear any testimony, and the police did not have any physical evidence, that conclusively links Henry Brown to the murder." Trial Transcript at 267. Other than Brown's confession and Simmons' accusation, the only evidence presented by the state is completely consistent with what Brown told the police the day after the murder—that he had received the deceased's automobile from Simmons and another man, and that he did not know how they got the car.

Finally, in considering the possible harmlessness of the Confrontation Clause violation, it is important to note that Brown's conviction came during his *second* trial. Brown's first trial ended with a hung jury unable to reach a verdict. As far as the record on appeal indicates, the first trial was not transcribed, but the record strongly suggests from the colloquy of court and counsel that a significant difference between the first and second trial was the limitation on Brown's right to inquire into Simmons' motives. *See* Trial Transcript at 611. In light of the absence of corroborating evidence of guilt and the importance of Simmons' accusation of Brown, coupled with the facts that Brown was allowed to probe Simmons' motives during the first trial and the first trial ended with a hung jury, I cannot conclude that the limitation on Brown's right to inquire into Simmons' motives was harmless beyond a reasonable doubt.

## II. OTHER CLAIMED ERRORS

In light of my above finding of a constitutional error, I ordinarily would not reach the merits of any other claimed errors. In light of the fact, however, that both the majority and dissenting opinions have discussed the issues, and in order to facilitate later consideration of this case, I will briefly discuss my conclusions with respect to the other issues. While I agree with portions of the analysis in the majority opinion and I disagree with portions of the dissent, I have concluded none of Brown's other claims merit the granting of the writ.

### A. *The Admission of the Hearsay Testimony*

For the reasons discussed in the majority opinion, *see* Majority Op. at 1551–52, and the district court opinion, *see* Dist. Ct.Op. at 3–4, I agree that the initial admission of Dallas's testimony of Simmons' accusation of Brown was inadmissible hearsay. Notwithstanding the fact that the state concedes this point, *see* Appellant's Brief at 18, the dissent argues that the testimony was not improper hearsay because it was admissible to show why Brown confessed. This argument, however, ignores the fact that the prosecutor presented and argued the hearsay testimony *for its truth*. *See* Trial Transcript at 513, 738. The dissent's argument that the testimony may have conceiv-

ably been admissible for a legitimate non-hearsay reason does nothing to eliminate the fact that it was presented for its truth and the prosecutor argued to the jury that it was true. In this case, the admission of the testimony was improper.

Nevertheless, I conclude that defense, by the nature of its entire trial strategy, waived any objection to the admission of the testimony. In light of the entire record, I think that it is clear that the defense's strategy, from the outset of the trial, was to argue to the jury that Brown's confessions were the product of the police repeatedly interrogating Brown (who was a juvenile at the time), conducting a number of the interrogations in the middle of the night, and finally arranging for Mack Simmons to accuse Brown to his face. According to the defense strategy, this pressure caused Brown to break down and confess to whatever the police wanted to hear.

It is clear that Brown's trial counsel at his *first* trial intended to follow such a strategy, and intended to place before the jury the details of Simmons' accusation of Brown that led Brown to confess. *See* Transcript of Hearing of Apr. 7, 1975, at 79, 83–84. In the second trial, Brown's trial counsel did not object when the prosecutor discussed in his opening statement the details of Simmons' face-to-face accusation of Brown. In the defense's opening statement, counsel for Brown repeated the details of Simmons' accusation of Brown, and made clear to the jury that his entire defense theory was that Brown was coerced into confessing. Because of the failure of certain pre-trial motions, Brown's counsel knew that Brown's confessions would be admitted into evidence, and thus the counsel focused on discrediting the confessions.

In light of the defense's strategy that included discussion of Simmons' accusation of Brown, Brown cannot now complain about the admission of the accusation. While the trial court erred by overruling a hearsay objection to the testimony of Simmons' accusation, Brown waived that error by relying on the same challenged testimo-

ny to build his argument that his confessions were coerced.

**B.** *The Testimony about Brown's Silence and the Prosecutor's Comments on the Silence*

Similarly, while I think that it was error to admit testimony about Brown's silence following Simmons' accusation, and I think that the prosecutor improperly commented on the silence during closing argument, I think that Brown waived any claims of error by eliciting detailed testimony about the silence in front of the jury. The parties disagree about which side first mentioned the silence. Upon review of the record, I conclude that the prosecutor first made a vague reference to the silence by way of omitting any reference to a reply by Brown to Simmons' accusation. *See* Trial Transcript at 513. Defense counsel, however, was squarely responsible for the first detailed discussion of the silence. *See id.* at 540.

In light of this, I conclude that Brown cannot complain about the admission of testimony of the silence. Questions by Brown's counsel highlighted the silence to the jury, and made crystal clear what had been only a vague inference. Brown must thus bear the responsibility for the focus on the silence. Furthermore, Brown's discussion of the silence and his implication that the silence was consistent with Brown's innocence excuses what otherwise would have been an improper comment on the silence by the prosecutor during closing argument. *See id.* at 738.

**C.** *Other Claims Errors*

Brown's other two claims of error are that the trial court erred by mentioning Brown's presence at the Simmons' accusation (and thereby suggesting the accusation might be true) and that the trial court erred by instructing the jury to disregard Brown's argument about the fact that Simmons was not called by the state. I agree with the district court and the majority opinion that both of these statements by the trial court were error. The constitutional dimension of both errors, however,

are tied to the admissibility or inadmissibility of Simmons' accusation of Brown. Because I conclude above that Brown was sufficiently responsible for the admission of the accusation so as to waive his claims about the admission, I do not think that these errors rise to a constitutional dimension. The trial court's statements were error, but did not add significantly to the damage done by the concession of Simmons' accusation itself. Thus, these two claims do not require habeas relief.

## III. CONCLUSION

In light of my conclusions in Part I of this opinion, I think that the district court was correct, on one ground, in granting the writ to the appellee. I therefore concur in the judgment of the majority opinion affirming the district court's grant of habeas corpus relief.

EDMONDSON, Circuit Judge, dissenting:

The purpose of a criminal trial is to determine whether the defendant is in fact guilty or innocent of the crime charged. In federal habeas corpus cases, a state conviction carries with it a presumption of legality. *See Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983).

Defendant in this case confessed—not just once but twice—to his part in the brutal murder. These detailed confessions were introduced against him; there is no contention here that the confessions were unlawfully admitted. Moreover, there was considerable physical and scientific evidence[1] introduced at trial which was consistent with defendant's confessions and, thus, corroborated them. Notwithstanding this extremely strong evidence and the presumption of legality, the court orders the State of Florida to set aside the conviction and grants defendant another trial. They say the presence of constitutional error demands this intrusion; but *if* there is constitutional error presented to us, it is harmless beyond reasonable doubt. Accordingly, we are unjustified in interfering with Florida's disposition of defendant's case.

As a practical matter, the only issue tried was the voluntariness and validity of Brown's confessions. This made the factual background leading to Brown's confessions relevant. All of the errors enumerated by the majority spring from a short portion of one witness's testimony. The prosecution's main witness was Detective Wesley Dallas, who investigated the murder. Detective Dallas described the confrontation he arranged between defendant Brown and Brown's friend, Mack Simmons, who had previously confessed to the murder and implicated Brown. Detective Dallas testified that when he brought Simmons into the room where Brown was sitting, Dallas asked Simmons if Brown had been involved in the crime. Over defense counsel's objection, the court allowed Dallas to testify that Simmons replied, "Yes."

From this one-word response, Brown has fashioned a pyramid of purported errors that the court concludes requires a new trial. Although the majority opinions appear to describe a trial fraught with constitutional errors, all of them are minor outgrowths of Simmons' accusation of Brown: (1) its admission into evidence; (2) the trial judge's limitation on testimony regarding Simmons' motives for making the accusation; (3) the trial judge's response to defense counsel's argument regarding the accusation; and (4) the prosecutor's reference to the accusation in closing argument. All of these purported errors are, at most, harmless; they certainly do not transform a one-word response into a constitutional violation requiring a new trial.

My first point of disagreement concerns Simmons' accusation of Brown. I agree that Simmons' reply would be inadmissible as hearsay to prove the truth of Simmons' statement; and, as a corollary, the reply would violate the confrontation clause if the reply's only relevance was its truth. But this does not end the confrontation clause debate in this case.

Simmons' answer, "Yes," was admissible for other, non-hearsay purposes, such as,

---

1. For example, fingerprint evidence linked defendant to the victim's automobile.

to explain Brown's decision to confess. This non-hearsay aspect of Simmons' "Yes" —not to prove that Brown took part in the murder but to prove what happened when Brown confessed—raises no confrontation clause concerns. *See generally United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 1128 n. 11, 89 L.Ed.2d 390 (1986); *Tennessee v. Street*, 471 U.S. 409, 410, 105 S.Ct. 2078, 2079, 85 L.Ed.2d 425 (1985); *United States v. Peaden*, 727 F.2d 1493, 1500 n. 11 (11th Cir.), *cert. denied*, 469 U.S. 857, 105 S.Ct. 185, 83 L.Ed.2d 118 (1984); *United States v. Norwood*, 798 F.2d 1094, 1097–98 (7th Cir.1986) ("[t]estimony about what [declarant] said to [defendant] was not offered to prove the truth of the matter asserted, but to establish the statement's effect upon [defendant's] state of mind and, therefore, was not hearsay"). Because "Yes" was admissible as nonhearsay, I think there was no confrontation clause violation.

We must first place this evidence in context. Brown's trial lasted four days. On the third day, Detective Dallas testified that he had arranged for Simmons to accuse Brown in person. During Dallas' testimony, the following exchange occurred:

Prosecutor: After you read the [Miranda] rights to them [Simmons and Brown], what happened then?

Dallas: I asked Mack Simmons if Henry Brown was involved in the death of Abraham Goldstone.

Prosecutor: And what did Mr. Simmons do or say?

Defense: Your honor, I will object on the grounds that it is hearsay on the grounds that I have no right of confrontation with Mr. Simmons. I will object.

Court: Was Mr. Brown present at that time, the defendant?

Witness: Yes, sir. He was.

Court: Overruled.[2]

Prosecutor: Please tell us what Mr. Simmons did or said.

Witness: He hesitated for approximately a minute before making an answer and then he said, 'Yes.'

This short exchange, which could not have lasted more than a few seconds, is asserted as the fundamental constitutional violation in Brown's trial. While it might have been better had the jury been instructed that Simmons' statement was not introduced for its truth, defense counsel requested no limiting instruction.[3] *See generally Walter v. State*, 272 So.2d 180, 182 (Fla.Dist.Ct.App.1973); *Johnson v. State*, 249 So.2d 470, 472 (Fla.Dist.Ct.App. 1971). Of course, there may have been good, tactical reasons for making no such

---

2. The district court interpreted this ruling as a comment "in the jury's presence that the accusation was admissible because petitioner was present when it was made." I do not agree that the jury would, or that reasonable jurors could, interpret this ruling as a comment that Simmons' accusation was true simply because it was made in Brown's presence.

3. Neither the Supreme Court nor this court has held that the admission in a state trial of evidence relevant and admissible as nonhearsay (but inadmissible for its truth) violates the confrontation clause when the defendant does not request and the court does not give a limiting instruction. Florida's Supreme Court said that Simmons' reply was allowed into evidence "on the ground that it was made in Brown's presence." *Brown v. State*, 367 So.2d 616, 624 (Fla. 1979). The state trial judge did not actually say that, but I agree with the state supreme court's statement as a matter of fact.

Still, the state trial judge never declared the legal reason for overruling the hearsay and con-

frontation clause objection. Because the circumstances leading up to the confessions were important facts concerning the voluntariness and validity of the confessions and because the trial judge did not explain his decision to allow Simmons' answer to be admitted, the purpose for which the evidence was allowed is an open issue. *Cf. Shepard v. United States*, 290 U.S. 96, 54 S.Ct. 22, 25, 78 L.Ed. 196 (1933). The state trial judge may have recognized the question as involving nonhearsay and, thus, allowable. The fact that the trial judge wanted to confirm that Simmons spoke in defendant's presence is completely consistent with admitting the evidence to explain defendant's decision to confess and does not require a conclusion that the testimony was allowed for its truth. *See Brown*, 367 So.2d at 624. This is not some sort of after-the-event justification, but an analysis of what the trial record shows.

Incidentally, the record, as I read it, does not support a contention that the prosecution ever argued the objected-to Simmons statement for its truth.

request. *See, e.g., Sica v. United States,* 325 F.2d 831, 836 (9th Cir.1963), *cert. denied,* 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 972 (1964). In instances such as this, because of these tactical considerations, it is the better practice not to give a limiting instruction if one is not requested.

Assuming arguendo [4] that there was a violation of the confrontation clause, it was plainly harmless. Our mandate is not to demand flawless trials. Trials are human endeavors; all are flawed. Consequently, it is our duty to recognize that "the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence" and to focus "on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 1436–37, 89 L.Ed.2d 674 (1986).

In this case, Brown received a fair trial. The government introduced not only two detailed confessions [5] given by Brown to the police, but also significant corroborating evidence. Brown was given ample opportunity to argue that the confessions were false or involuntary or both.

Both the prosecutor and defense counsel commented, without objection, in their opening statements to the jury that Mack Simmons—in the face to face confrontation with Brown shortly before Brown's first confession—had accused Brown of being involved in this murder. Furthermore, on no fewer than three occasions in the trial *before* the colloquy quoted above, Detective Dallas testified, without objection, that Mack Simmons had implicated Brown in the murder. After the single, noncontinuing defense objection to the testimony quoted above, Detective Dallas testified at least five more times, all without objection, that Simmons had implicated Brown. The defense made no motions to strike any of this evidence.

Leaving aside the interesting question of whether defense counsel waived any objection by failing to object to eight of the nine instances of the testimony, it is clear to me that the introduction of the single answer to which the defense did object is at most harmless error. In light of multiple confessions and the corroborating evidence that the government introduced, the jury was not likely influenced to any degree by the one repetition of Mack Simmons' accusation to which the defense objected. Because of the lack of objections, the fact that Mack Simmons said defendant was involved in the murder was already properly before the jury. *See United States v. Jamerson,* 549 F.2d 1263, 1266–67 (9th Cir. 1977). Any error in the admission of the one bit of accusation testimony objected to was harmless.

Once Simmons' accusation is placed in its proper context, the rest of Brown's arguments may be viewed as the trivialities that they are. I disagree with the majority's view of the closing arguments in the trial. The district court concluded that the trial judge acted erroneously in instructing the jury to disregard Brown's defense counsel's argument that the prosecution should have called Mack Simmons to testify.[6]

Even had this trial been in federal court, the judge's instruction would be at most "invited error", responsive to defense counsel's earlier argument that Mack Simmons' absence indicated bad faith on the part of the government. *Cf., United States v.*

---

4. The attorneys for the State of Florida have not contested on appeal that a confrontation clause error occurred, but have relied on waiver and harmless error.

5. One was an oral statement to Detective Dallas which he recounted at trial. The other was in writing, having been given in the presence of a court reporter and signed by defendant.

6. The trial transcript reveals the following conversation during defense counsel's rebuttal argument to the jury:

Defense: "... Mr. McGuirk made a whole big thing about Mack Simmons. Was Mack Simmons here? Mr. McGuirk told you all it takes is a subpoena, and they have to come —"

Prosecution: "Judge, I object, and ask the Court to instruct the jury."

Court: "Disregard that. Mr. McGuirk can subpoena any witness as could Mr. Robbins could subpoena any witness. Both have had an opportunity to bring any witnesses they wish."

*Ard*, 731 F.2d 718, 727 (11th Cir.1984) (in view of the fact that defense attorneys specifically argued that one government agent was never called to testify, prosecutor's argument that agent could have been called by the defense as well as the government was not reversible error); *United States v. Esle*, 743 F.2d 1465, 1477 (11th Cir.1984). In reviewing this habeas petition dealing with a trial in state court, this court can hardly find a constitutional violation in conduct that could not be considered error in a direct appeal from a federal district court.

A similar analysis applies to the prosecutor's closing argument regarding Brown's silence in response to Simmons' statement. Contrary to the district court and majority's assertion, the trial transcript does not reveal any testimony that Brown was silent after Simmons' accusation.[7] Also contrary to the district court and majority opinion, the first time that the jury heard that Brown never responded to Simmons was in defense counsel's closing argument, which (because defendant had introduced no evidence) *preceded* the prosecutor's argument.

It is critical that the prosecution's argument came after defendant's argument had already been heard. In his closing statement, Brown's attorney argued that Brown confessed because the confrontation with Simmons was coercive, as evidenced by the fact that the police ostensibly ushered Simmons out of the room before Brown even had a chance to answer the accusation.

The prosecutor then responded to that charge by arguing that Brown did in fact have a chance to answer Simmons but did not and that Brown's silence was consistent not with innocence, as the defense claimed, but with guilt.

The prosecutor was perhaps overzealous in his response to defense counsel's argument. That zeal, however, was provoked by defense counsel's argument—an argument to which the prosecutor was entitled, indeed forced, to respond. Thus, the doctrine of "invited error" also applies here. As this circuit has previously held in similar circumstances, "the government's comment [on the defendant's failure to testify] in the case at bar was in response to defense counsel's reference to his client's silence. Accordingly, the admission of the arguably impermissible comment does not constitute reversible error." *United States v. Males*, 715 F.2d 568, 571 (11th Cir.1983). The prosecutor's comment about Brown's silence, therefore, cannot be a basis for overturning his conviction.

The final error upon which the court relies in Brown's trial is the trial judge's purported limitation of defense counsel's cross-examination of Detective Dallas regarding Simmons' motives to implicate Brown. Needless to say, cross-examination can be important. The trial transcript, however, reveals no unconstitutional limitation. At one point, defense counsel attempted to elicit testimony from Detective Dallas to the effect that the first time he

---

**7.** According to the trial transcript, during the prosecutor's direct examination of Detective Dallas, defense counsel conducted in front of the jury the following voir dire examination:

 Defense: What did Mack Simmons finally say?

 Dallas: Yes.

 Defense: Did you give Henry Brown an opportunity to talk to Mack Simmons or question him?

 Dallas: About two minutes went by before I had Simmons removed from the room.

There was no other mention of Brown's silence until defense counsel cross-examined Detective Dallas:

 Defense: Would it be fair to say Mack Simmons, after you heard the uttered word, yes, was removed from that room within a minute?

 Dallas: No, sir.

 Defense: Two minutes?

 Dallas: Possibly.

 Defense: Was anything said after the word "Yes" by Mack Simmons?

 Dallas: Yes, sir.

 Defense: Did you ask Detective Storer to take Mack Simmons back?

 Dallas: Yes, sir.

On redirect examination, the prosecutor only asked one question about Brown's reaction to Simmons' accusation:

 Prosecutor: Do you recall if the defendant said anything during that two minutes or so when Mack Simmons says he was involved, and then there was nothing but quiet?

 Dallas: I don't recall now, sir.

heard of Brown's involvement in the murder was from Simmons' defense attorney and in the context of working out a deal for Simmons. The trial judge ruled that such testimony was inadmissible hearsay. Seemingly, such a ruling was proper under Florida law. Neither Brown nor the district court nor the majority have cited any precedent for holding that exclusion of such hearsay testimony implicates any constitutional rights of a defendant, and I do not think defendant had a constitutional right to introduce hearsay.

Defense counsel was not barred from inquiry concerning a deal as a motivator for Simmons' accusation of defendant Brown. In the face of the prosecutor's hearsay objections, the state trial judge told defense counsel at least three times that defense counsel could ask about any deals that were made with Simmons, but not about what Simmons' lawyer (who, of course, was not the witness being examined) had said or asked for on Simmons' behalf.

For example, the trial judge specifically told Brown's counsel,

What Mr. Emory [Simmons' attorney] was trying to do has nothing to do with Mr. Dallas. If you can ask Mr. Dallas if a deal was worked out with him [Mack Simmons] to do that, fine, and if you can prove that he did not work out a deal, but what was requested by Mr. Emory has nothing to do with it. It would be absolutely improper.

The judge did point out, however, that if the defense counsel inquired into the Simmons' plea negotiations or deal (if any), the prosecution was entitled to inquire into all of the circumstances surrounding those subjects. Defendant did not pursue the matter: apparently, Simmons' and Brown's plea negotiations had become entangled at some point. Again, no one has explained how such a notice to counsel could be fairly described as a true limitation on cross-examination or how this notice impinged on Brown's constitutional rights.

Even if the state trial judge was in error in believing that further inquiry would properly "open the door" to much more evidence from the prosecution, defense counsel was certainly left free to make his further inquiry; and defense counsel could have objected to any subsequent prosecutorial evidentiary matters that defense counsel thought were inadmissible and uninvited. Such defense objections might have been sustained by the trial court on greater reflection. If not, the state appellate courts could correct state evidentiary error. Instead, defense counsel did not pursue the matter. I do not criticize defense counsel for making this choice, but he was not so compelled and limited as to involve federal constitutional rights. In this respect, this case is like none cited by my colleagues. Although it is at times proper, federal courts ought to be very slow in converting typical instances of state trial judges exercising discretion in respect to evidentiary matters into matters of federal constitutional import. The trial judge's control of cross-examination in this case violated no constitutional principle. Trial lawyers commonly face difficult choices; the federal Constitution does not prohibit all hard choices.

In conclusion, all of the supposed errors raised on this appeal made Brown's trial, at worst, less than perfect; but it was not less than fair. "The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to a fair and correct judgment.... '[T]he Constitution entitles a criminal defendant to a fair trial, not a perfect one.'" *Rose v. Clark*, —— U.S. ——, 106 S.Ct. 3101, 3107 [92 L.Ed.2d 460] (1986) (quoting *Delaware v. Van Arsdall*, 106 S.Ct. at 1436). Furthermore, when federal courts reverse where error almost certainly never affected the judgment, they "[encourage] litigants to abuse the judicial process and [bestir] the public to ridicule it." *Id.* at ——, 106 S.Ct. at 3106 (quoting R. Traynor, The Riddle of Harmless Error 50 (1970)).

The evidence against Brown was powerful. The record in this case establishes no constitutional reason to order the State of Florida to grant a new trial. Rather, the record reveals beyond a reasonable doubt that a seventy-year-old man who chose the

wrong day to cash his Social Security check was stuffed into the trunk of his car, beaten, shot, and drowned simply because Henry Brown and his friends wanted a car to rob a bank. Henry Brown has repeatedly admitted that he took part. This was a horrible crime which, of course, Florida has a right to punish. Federal courts have no right and no power to interfere with a state conviction absent harmful constitutional error. I would reverse the judgment of the district court.

Accordingly, I dissent from the opinion and judgment of the court.